UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | () | CRIMINAL ACTION |
| | () | NO. H-11-45 |
| VS. | () | HOUSTON, TEXAS |
| | () | AUGUST 30, 2011 |
| JAMES PETERS | () | 10:40 A.M. |

EXCERPT OF JURY TRIAL
BEFORE THE HONORABLE SIM LAKE

TESTIMONY OF HENRY KILLIAN

APPEARANCES:

FOR THE GOVERNMENT:
Mr. Joe Magliolo
Mr. Ruben Perez
Assistant United States Attorneys
1000 Louisiana, Suite 2300
Houston, Texas 77002

FOR THE DEFENDANT:
Mr. Thomas S. Berg
Mr. Gus Saper
Mallett Saper Berg
600 Travis, Suite 1900
Houston, Texas 77002

COURT REPORTER:
Anita G. Manley
Official Court Reporter
515 Rusk, 8th Floor
Houston, Texas 77002

Proceedings recorded by stenographic means, transcript produced by computer.

P R O C E E D I N G S

MR. MAGLIOLO: Thank you. We call Henry Killian.

(Witness sworn by the Court.)

THE COURT: Please have a seat.

The Government may proceed.

MR. MAGLIOLO: Yes, Your Honor.

HENRY KILLIAN, GOVERNMENT'S WITNESS, SWORN

DIRECT EXAMINATION

BY MR. MAGLIOLO:

Q. Sir, please state your name for the ladies and gentlemen of the jury, the Court, and the court reporter.

A. Henry Killian.

THE COURT: I'm having trouble hearing you. Will you please pull the microphone to you. Speak clearly into it so the jury and I can hear you.

A. Henry Killian.

BY MR. MAGLIOLO:

Q. How are you employed, sir?

A. I'm sorry, sir?

Q. How are you employed?

A. I'm employed with the Department of Homeland Security at the Air and Marine Operations Center, Riverside, California.

Q. And how long have you been employed there?

A. 16 years.

Q. And could you just briefly explain to the ladies and

gentlemen of the jury what your job description is.
A. I'm a program manager for electronic tracking which maintains all the tracking devices inside our aircraft to ensure the accuracy, the funding, and everything else they can think of.
Q. And are you at your facility there able to track an electronic component in the Border Patrol helicopters?
A. Yes.
Q. And were you able to do that on a flight that occurred on December 14, 2005?
A. Yes.
Q. And did you do that?
A. Yes.
Q. Explain to the ladies and gentlemen of the jury how you go about doing that.
A. We monitor the tracking devices and we -- they're displayed on a screen, computerized screen, with live radar. That's pretty much it.
Q. And is a record kept of that?
A. We do archive. We do archive all the positions coming in so in case somebody needs a picture, the data, whatever, we can extract that data from the database and produce a Word document or a picture or whatever the requirement is.
Q. Did you get a request to do that for December 14, 2005, on that helicopter identified as N5185B?

A. Yes.
Q. And did you do that?
A. Yes.
MR. MAGLIOLO: May I approach the witness, Your Honor?
THE COURT: Yes.
BY MR. MAGLIOLO:
Q. I'm going to show you what's been marked for Government identification purposes as Government Exhibit 2 and ask you if you recognize this?
A. Yes, I do recognize that.
Q. And who caused that to be produced?
A. I did.
Q. And what is it?
A. It's a Notepad Word document that depicts the time, positions, the type of tracking device, and the lat/long positions of that device in the aircraft.
Q. And I want to show you what's been marked as Government Exhibit No. 1 and 1A and ask you if you recognize those two documents?
A. Yes, I do.
Q. And what are they?
A. They depict four of the positions off this sheet on here and there (indicating).
Q. So you're able to get the computer printout position and then depict that on a map?

A. Correct.
Q. And just kind of briefly, how do you do that?
A. We use Google Earth. You basically type in -- hand-type in the position on Google Earth. You let Google Earth do its thing and tells you where it is on the earth.
Q. And I'm going to show you what's in evidence as -- I'm sorry -- what has been marked as Government No. 1B and 1C and ask you if you recognize them?
A. Yes, I do.
Q. And what are they?
A. These are called KMZ files with Google Earth, and it depicts the four positions that are already -- that are grouped close together and the timing with the lat/long showing the accuracy of the device.
Q. And this also shows the location of that helicopter?
A. Correct.
Q. On December 14, 2005?
A. Yes.
Q. And is there anything that you look to to kind of verify the accuracy? Or how did you pick these particular locations?
A. The timing, how close, and how close you are together.
Q. Explain that to the ladies and gentlemen of the jury.
A. We're basically looking at -- in this picture here, we're looking at a three- to four-minute time frame and with the lat/longs, and it depicts the helicopter with the device was 1,

2, 3, 4 and on that side of the bridge.
Q. Are you familiar -- that's POE No. 2 in Laredo, Texas?
A. Yes.
Q. Do you show what time this occurred?
A. Yeah. The times occurred are in GMT time, not local. It's from 1809 to 1812.
Q. That would be Zulu time?
A. Correct, Zulu time.
Q. So five hours difference. So it happened around 1:00-ish, around?
A. Yes.
Q. Okay.

MR. MAGLIOLO: We would offer Government's 1B, 1C, 1A, 1, and 2 into evidence at this time, Your Honor.

MR. SAPER: Can I look at them briefly?

MR. MAGLIOLO: I tender to counsel for --

THE COURT: I only have 1A, but you're also offering 1B and 1C?

MR. PEREZ: Yes.

THE COURT: So you're offering 1 and then 1A and 1B and 1 C; is that correct?

MR. MAGLIOLO: Correct, Your Honor.

MR. PEREZ: May I approach the bench, Your Honor? I've got copies.

THE COURT: Okay. That's fine.

Is there any objection to those exhibits?

MR. SAPER: Can I ask a couple of questions on voir dire, Your Honor?

THE COURT: Yes.

VOIR DIRE EXAMINATION

BY MR. SAPER:

Q. Mr. Killian, this document, Government Exhibit No. 2, contains three pages; is that correct?

MR. SAPER: May I approach the witness, Your Honor?

THE COURT: Yes, of course.

MR. SAPER: Thank you.

A. Three pages.

BY MR. SAPER:

Q. And this is a document that you prepared, correct?

A. Yes.

Q. And I think you said it was a Word document?

A. Extracted from the database of the server where the information comes into.

THE COURT: Let me ask, where does this database exist?

THE WITNESS: Riverside, California, sir, at the Air and Marine Operations Center, the facility for Homeland Security.

THE COURT: How is the data acquired?

THE WITNESS: We use a program called Dreamweaver.

It's -- one of our smart IT techs came in here and wrote a program for me. It goes through all the different positions and says, Okay, I want to look at this particular date, I want to look for this particular device, and tell me what you archive.

THE COURT: Does every aircraft, whether fixed wing or rotary, emit some type of signal which is recorded?

MR. MAGLIOLO: If it please the Court, some of this gets into security matters, and that's why the Government hasn't gone into any more detail than we have.

THE COURT: But what I said was basically accurate?

THE WITNESS: Yes, sir.

THE COURT: Thank you.

MR. SAPER: May I proceed, Your Honor?

THE COURT: Yes.

MR. SAPER: Thank you.

BY MR. SAPER:

Q. And how do you identify the aircraft?

A. By the tracking device number, BPELP451.

Q. And it has nothing to do with the transponder code on the aircraft?

A. Totally separate.

Q. And it doesn't tell you who's flying the aircraft that day?

A. Correct.

Q. Okay. And --

MR. SAPER: That's all I have on voir dire, Your Honor.

THE COURT: Is there any objection to the exhibits?

MR. SAPER: No objection, Your Honor.

THE COURT: All right. Exhibits 1, 1A, 1B, 1C, and 2 are admitted.

MR. MAGLIOLO: Your Honor, if it please the Court, we'd like to display on the screen initially Government's --

THE COURT: You need the ELMO?

MR. MAGLIOLO: No, we have it on a computer program, Your Honor.

THE COURT: You may do so.

MR. MAGLIOLO: Government's No. 1 would be the first one.

BY MR. MAGLIOLO:

Q. Can you explain to the ladies and gentlemen of the jury what they're looking at?

A. You're looking at a map of Laredo, Texas, and you can see the four red dots. Those are the positions that are -- where the tracking device inside the helicopter was.

Q. There it is.

A. The four red dots.

Q. And you're able to get those because it's spending some time there as opposed to flying by?

A. Correct.

Q. And the more time it spends, the more accurate, I believe you told the jury, the more accurate your facts and figures are?
A. That is correct.
Q. Okay. Let's go to, just so they can see it, Government's No. 2, at least the first page of it. And that's what you explained to the ladies and gentlemen of the jury the computer prints out that enables you then to plot it on Google Earth?
A. That is correct.
Q. If you would, let's see Government's No. 1B. Those, again, are the spots, the location, of that particular helicopter with the lats/longs and other information?
A. Yes, at the time also. Yes.
Q. And the bridge is Port of Entry No. 2?
A. Yes.
Q. And then 1C would be even a blowup of 1B. Let's see 1C.
So that was -- that helicopter was there on that day at that time?
A. Yes, sir.
MR. MAGLIOLO: Pass the witness, Your Honor.
THE COURT: Mr. Saper.

CROSS-EXAMINATION

BY MR. SAPER:
Q. Do you know how this signal is sent from a particular aircraft or from the one that that log showed?

A. Yeah. It transmits from the aircraft up to a satellite down to a commercial server. Then it connects into our server at Riverside, California. It is in process, then displayed on our computer visual display system.

Q. And that process is separate and apart from the GPS unit that the pilot would use to navigate with, correct?

A. Correct.

Q. And it is a separate unit that's plugged into the aircraft that tracks the data. So there's a separate little box that's plugged into the aircraft?

A. Yes, sir.

Q. And the only way that you receive that information is if the box is plugged in or if it's turned on, correct?

A. My understanding -- well, yes.

Q. So if it's unplugged, you wouldn't receive any information?

A. Correct.

Q. And how many times a second or how many times a minute or how many times an hour do you receive information from an aircraft?

A. You receive information from an aircraft 24 hours a day, 7 days a week.

MR. SAPER: May I approach the witness, Your Honor?

THE COURT: Yes.

I think he means how frequently during an hour. Every minute? Every 30 seconds?

THE WITNESS: We track all our aircraft, and sometimes we receive five or six hits a second. Then on the -- at night, we may get one hit every minute --

THE COURT: Okay.

THE WITNESS: -- depending on how many aircraft are airborne.

BY MR. SAPER:

Q. This is a copy of the log that you created, correct?

A. Uh-huh.

Q. Did you pick and choose which data to include in this list or is it all the data for that time period?

A. This is the data that was requested on me for -- they were asking for, "We want the data for December 14th," and that's what I produced.

Q. So that's all the data that existed for December 14th?

A. For that particular device.

Q. Okay. The picture that you saw up there from Google Earth had four plots on it, correct? And let me pull them up on the screen real quick.

THE COURT: Do you need the ELMO or your computer?

MR. SAPER: My computer, Your Honor, please.

BY MR. SAPER:

Q. Does this correspond to the four plots that you had on your --

A. They look like it, yeah. I don't know about the lat and

long, but, yeah, they look -- the pattern looks right.
Q. Would you look at Government Exhibit 1B? Just look at this coordinate on 1B.
A. Okay.
Q. It would be 9930.109. And can you tell how far this is from the bridge?
A. No.
Q. Approximately 222 feet; is that correct?
A. That's what it says.
Q. And that's approximately 109 feet, correct?
A. Correct.
Q. And, actually, this plot is as close as the helicopter gets to that bridge, correct?
A. That's the time that the device transmitted.
Q. Okay. On the data that you have in front of you, that's as close as the helicopter gets to that bridge?
A. The data that I -- the data that I -- yes. The data that I have, yes.
Q. Okay. Now, we talked about or you spoke about Zulu time, and I think the assistant United States Attorney asked you whether or not that was Greenwich Mean Time, correct?
A. That is correct, yes.
Q. Greenwich Mean Time refers to not Greenwich, Connecticut, but Greenwich, England, correct?
A. Correct.

Q. And there's a meridian that runs through Greenwich?

A. Correct.

Q. And it stays constant; it never changes. It never goes to Daylight Savings Time. It is the one constant time that everybody refers to, correct?

A. Correct.

Q. And there will be a time differential between what time it is in Greenwich, England, and what time it is in New York or Houston or Laredo or Tucson or somewhere else, correct?

A. Correct.

Q. And, in fact, the differential, when there's not Daylight Savings Time, between Greenwich Mean Time and Laredo is six hours, not five hours, correct?

A. I believe so.

Q. Thank you.

Now, none of these plots, if we included all of them, shows the helicopter under the bridge, correct?

A. Under the bridge?

Q. Under the bridge. And based on these plots, you really can't tell what the altitude is of the helicopter?

A. That's correct.

MR. SAPER: Pass the witness, Your Honor.

THE COURT: Anything else from the Government?

MR. MAGLIOLO: Yes, Your Honor. If we could put Government's No. 2 on?

REDIRECT EXAMINATION

BY MR. MAGLIOLO:

Q. The highlighted areas are the areas that are corresponding to the plots; is that correct?

A. Correct.

Q. And if it says the Zulu time, 1808, then depending on the calculation, it would show the time the helicopter was present there by the bridge?

A. Correct.

Q. So, based on what counsel said, it would be a six-hour difference with Daylight Savings, five without. So, at Daylight Savings, it would be minus 5, would put it at 108 when it says 1808?

A. That's correct.

MR. MAGLIOLO: That's all we have.

THE COURT: Thank you.

MR. SAPER: Just a couple of questions, Your Honor, real briefly. May I approach the witness?

THE COURT: Yes.

MR. SAPER: Thank you.

RECROSS-EXAMINATION

BY MR. SAPER:

Q. Those four plots that we saw up on Google Earth relate to this time period, approximately 180919 through 181216?

A. Correct.

Q. And if that's Zulu time or Greenwich Mean Time, you would subtract six hours because December is not Daylight Savings time in Laredo, Texas, correct?
A. Correct.
Q. And, so, the actual time would be 1208 or 1209 or 1210 or 1211 or 1212?
A. I don't know when Laredo goes into Daylight Savings or not. All I know is that that happened at 1808 GMT.
Q. Okay. So, if Laredo is not Daylight Savings Time in December of 2005, it would correspond to approximately 1209, correct?
A. I don't know that for sure.
MR. SAPER: Pass the witness, Your Honor.
MR. MAGLIOLO: We just offer Government's 13A, which was the video, Your Honor, that we showed it -- published to the jury.
MR. SAPER: No, objection, Your Honor.
THE COURT: Are you offering 13A?
MR. MAGLIOLO: Yes, Your Honor.
THE COURT: You already offered 13B. Is there --
MR. MAGLIOLO: 13B is the very long tape that 13A a few minutes was extracted from.
THE COURT: So the jury saw 13A?
MR. MAGLIOLO: Yes, Your Honor.
THE COURT: It's admitted.

MR. MAGLIOLO: Thank you, Your Honor.

THE COURT: May Mr. Killian be excused?

MR. MAGLIOLO: Yes, Your Honor.

THE COURT: Thank you, sir. You're excused.

(Conclusion of excerpt)

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, TO THE BEST OF MY ABILITY.

________________________ 3/23/14

ANITA G. MANLEY
OFFICIAL COURT REPORTER